| People v Rosario |
|:---:|
| 2022 NY Slip Op 34824(U) |
| October 11, 2022 |
| County Court, Westchester County |
| Docket Number: Indictment No. 22-71506-02 |
| Judge: Anne E. Minihan |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

COUNTY COURT: STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK

       -against-

ANDY ROSARIO

                           Defendant.
------------------------------------------------------------X



FILED

AND ENTERED

ON 10-14- 2022

WESTCHESTER

COUNTY CLERK

DECISION & ORDER
Indictment No. 22-71506-02

MINIHAN, J.

    Defendant, Andy Rosario, is charged by Westchester County Indictment Number 22-71506-02 together with codefendants Junior Silverio Ventura, Edwin Fortunato-Tapia, and Luis Estevez-Peralta with Grand Larceny in the Third Degree (Penal Law § 155.35[1]) and Auto Stripping in the Third Degree (Penal Law § 165.09[1]. Codefendant Junior Silverio Ventura is additionally charged with Unlawful Fleeing a Police Officer in a Motor Vehicle in the Third Degree (Penal Law § 270.25) and Reckless Driving (Vehicle and Traffic Law § 1212). Defendant has filed an omnibus motion consisting of a Notice of Motion, an Affirmation in Support, and a Memorandum of Law. In response, the People filed an Affirmation in Opposition together with a Memorandum of Law.

I.

### MOTION to INSPECT, DISMISS, and/or REDUCE
### CPL ARTICLE 190

    Defendant moves pursuant to CPL 210.20 to dismiss the indictment, or reduce the counts charged against him, on the grounds that the evidence before the Grand Jury was legally insufficient, and the Grand Jury proceeding was defective within the meaning of CPL 210.35. On consent of the People, the Court has reviewed the minutes of the proceedings before the Grand Jury.

    The Court denies defendant's motion to dismiss or reduce the counts in the indictment for legally insufficient evidence because a review of the minutes reveals that the evidence presented, if accepted as true, would be legally sufficient to establish every element of the offenses charged, *including that the value of the stolen catalytic converter exceeded $3,000.00 (see* CPL 210.30[2]). Defendant argues that the People did not meet their burden of establishing the value of the 16 year-old stolen catalytic converter since they failed to present evidence of the market value of a 16-year old catalytic converter, but rather the replacement cost of a new one, thereby inflating its value. According to the People in their papers, it would not be possible to ascertain the market value of a 16 year-old catalytic converter since it is illegal to sell a used one in New York State (*see* 6 CRR-NY 218-7.2[c][2]). As such, the People presented evidence through Detective DeMatteo detailing the *replacement cost* of a catalytic converter for a Honda CRV according to the Yonkers Honda car dealership. Specifically, the testimony before the Grand Jury was as follows:[1]

---

[1] It is necessary for the Court to discuss specific testimony from the Grand Jury proceedings in deciding the instant motion (*see* CPL 190.25[4]).

Detective DeMatteo: I contacted the service manager, Rich Leon, from Yonkers Honda, and he was able to give us a printout of what an average cost of a catalytic converter is. Because not only do they just cut the catalytic converter out, but they rip it out. … They just cut and rip. So they damage wire harnesses. You've got to replace the exhaust system forward and reverse, because, they didn't unbolt it, they cut it. So, basically, you need a whole new exhaust system and a wire harness and a sensor to replace your vehicle back to normal operating position (Grand Jury minutes, page 43, lines 19-24; page 44, lines 3-10).

ADA Murphy: So excluding labor, is the cost, is the fair market value cost to replace a catalytic converter stolen from a Honda, such as the one in this case, more than $3,000.00?

Det. DeMatteo: Yes. Just for parts, not including labor (Grand Jury minutes, page 44, lines 14-19).

This testimony was sufficient to establish the replacement value of the stolen catalytic converter and the basis for that value.

Moreover, defendant argues that the owner's deposition admitted into evidence listed the value of the damage done to the vehicle, but the basis for that valuation was not included in the testimony or through other evidence. In fact, the testimony of Detective DeMatteo sufficiently established the value of the replacement of the catalytic converter along with the necessities that went with it in order to get the Honda CRV working again.

Pursuant to CPL 190.65(1), an indictment must be supported by legally sufficient evidence which establishes that the defendant committed the offenses charged. "Courts assessing the sufficiency of the evidence before a grand jury must evaluate whether the evidence, viewed most favorably to the People, if unexplained and uncontradicted--and deferring all questions as to the weight or quality of the evidence--would warrant conviction" (*People v Mills*, 1 NY3d 269, 274-275 [2002]). Legally sufficient evidence means competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof (CPL 70.10[1]; *see People v Flowers*, 138 AD3d 1138, 1139 [2d Dept 2016]). "In the context of a Grand Jury proceeding, legal sufficiency means prima facie proof of the crimes charged, not proof beyond a reasonable doubt" (*People v Jessup*, 90 AD3d 782, 783 [2d Dept 2011]). "The reviewing court's inquiry is limited to whether the facts, if proven, and the inferences that logically flow from those facts supply proof of every element of the charged crimes, and whether the Grand Jury could rationally have drawn the guilty inference. That other, innocent inferences could possibly be drawn from those facts is irrelevant to the sufficiency inquiry as long as the Grand Jury could rationally have drawn the guilty inference" (*People v Bello*, 92 NY2d 523, 526 [1998]). Here, the evidence presented, if accepted as true, is legally sufficient to establish every element of the offenses charged (CPL 210.30[2]).

With respect to defendant's claim that the Grand Jury proceeding was defective within the meaning of CPL 210.35, a review of the minutes reveals that a quorum of the Grand Jurors was present during the presentation of evidence, and that the Assistant District Attorney properly and clearly instructed the Grand Jury on the law and only permitted those Grand Jurors who heard all

2

[* 2]

the evidence to vote the matter (*see People v Collier*, 72 NY2d 298 [1988]; *People v Calbud*, 49 NY2d 389 [1980]; *People v Valles*, 62 NY2d 36 [1984]; *People v Burch*, 108 AD3d 679 [2d Dept 2013]).

To the extent that defendant's motion seeks disclosure of portions of the Grand Jury minutes beyond the disclosure directed by CPL Article 245, such as the prosecutor's instructions and/or colloquies, the Court denies that branch of the motion.

II.

## MOTION for DISCOVERY, DISCLOSURE, and INSPECTION
## CPL ARTICLE 245

To whatever extent material that is discoverable under CPL Article 245 has not already been provided to the defense by the People, defendant's motion is granted and such discovery, including both *Brady* material and *Rosario* material, shall be provided forthwith. Leave is granted for either party to seek a protective order (CPL Article 245). If the defense has a particularized reason to believe that there remains outstanding discovery with which counsel has not been provided, counsel is directed to contact the assigned Assistant District Attorney upon receipt of this order. If the issue remains unresolved within four days of receipt of this order, counsel for the defendant shall contact the Court to request an immediate compliance conference.

The People filed a Certificate of Compliance on or about July 5, 2022 and they are reminded of their continuing obligation to remain in compliance with the discovery mandates set forth in CPL Article 245 and to file supplemental Certificates of Compliance as the need arises.

The People acknowledge their continuing duty to disclose exculpatory material (*Brady v Maryland*, 373 US 83 [1963]; *see Giglio v United States*, 405 US 150 [1971]). The People also acknowledge that they have or will comply with their obligations under CPL 245.20(1) (k), (l), and (p). If the People are or become aware of any such material which is arguably subject to disclosure under *Brady* and its progeny and Criminal Procedure Law Article 245 which they are unwilling to consent to disclose, they are directed to bring it to the immediate attention of the Court and to submit it for the Court's in camera inspection and determination as to whether it constitutes *Brady* material discoverable by defendant.

The Court has served a *Brady* Order on the People, dated August 2, 2022, which details the time period their disclosure must be made in accordance with the standards set forth in the United States and New York State Constitutions and CPL Article 245.

The People must disclose the terms of any deal or agreement made between the People and any prosecution witness at the earliest possible date (*see People v Steadman*, 82 NY2d 1 [1993]; *Giglio v United States*, 405 US 150 [1972]; *Brady v Maryland*, 373 US 83 [1963]; *People v Wooley*, 200 AD2d 644 [2d Dept 1994]).

3

III.
## MOTION to SUPPRESS NOTICED STATEMENTS

Defendant moves to suppress statements made by him on the grounds that they were involuntary, the product of an unlawful arrest, made without *Miranda* warnings, and in violation of defendant's right to counsel. However, the People have not noticed any statements attributed to defendant. As such, defendant's motion is moot or premature and is denied. To the extent the People choose to cross-examine defendant, should he elect to testify, the People are instructed to obtain a ruling from the trial court should they seek to impeach him with any unnoticed statements.

IV.
## MOTION to SUPPRESS PHYSICAL EVIDENCE

This branch of defendant's motion is granted solely to the extent of conducting a *Mapp* hearing prior to trial to determine the propriety of any search resulting in the seizure of property (*see Mapp v Ohio*, 367 US 643[1961]). The hearing will also address whether any evidence was obtained in violation of defendant's Fourth Amendment rights (*see Dunaway v New York*, 442 US 200 [1979]).

Insofar as defendant challenges the seizure of evidence not obtained from his person, the pre-trial hearing will address whether defendant had a reasonable expectation of privacy in any of the locations searched to constitute standing to challenge the seizure of any physical evidence (*see Rakas v Illinois*, 439 US 128 [1978]; *People v Ramirez-Portoreal*, 88 NY2d 99 [1996]; *People v Ponder*, 54 NY2d 160 [1981]; *People v White, 153* AD3d 1369 [2d Dept 2017]; *People v Hawkins*, 262 AD2d 423 [2d Dept 1999]). If it is determined that defendant has standing, then the *Mapp* hearing will also determine the propriety of the subject search and seizure.

With respect to any evidence which was retrieved pursuant to a search warrant, the motion to suppress is denied. The results of a search conducted pursuant to a facially sufficient search warrant are not subject to a suppression hearing (*People v Arnau*, 58 NY2d 27 [1982]). Upon review of the four corners of the search warrant affidavit, provided to the Court, the five warrants were adequately supported by probable cause (*see People v Keves*, 291 AD2d 571 [2d Dept 2002]; *see generally People v Badilla*, 130 AD3d 744 [2d Dept 2015]; *People v Elysee*, 49 AD3d 33 [2d Dept 2007]).

V.
## MOTION for SEVERANCE and for a SEPARATE TRIAL

Defendant moves to sever his trial from that of his codefendants claiming that a possible *Sandoval* ruling would negatively impact him, statements made by his codefendants inculpate him and "would clearly be prejudicial to [him]," and since he is only charged with two of four counts of the indictment, he would be prevented from obtaining a fair trial.

Defendant was properly joined in the indictment (CPL 200.40[1][d]). While the Court may, in its discretion, and for good cause shown, order that defendant be tried separately, defendant failed to demonstrate good cause for severance. Good cause includes a showing that defendant would be "unduly prejudiced by a joint trial" (CPL 200.40[1]). Where the proof against all

4

defendants is supplied by the same evidence, "only the most cogent reasons warrant a severance" (*People v Bornholdt*, 33 NY2d 75, 87 [1973]; *People v Kevin Watts*, 159 AD2d 740 [2d Dept 1990]). "[A] strong public policy favors joinder, because it expedites the judicial process, reduces court congestion, and avoids the necessity of recalling witnesses..." (*People v Mahboubian*, 74 NY2d 174, 183 [1989]).

Defendant's motion to sever on the ground that there would potentially be prejudice arising from a *Sandoval* or *Huntley* ruling is denied as premature, with leave to renew after a *Sandoval* or *Huntley* ruling, and upon a showing that a joint trial would result in unfair prejudice to him and substantially impair his defense.

Additionally, defendant's claim that a severance is warranted because the noticed statements of his codefendants (and/or confessions) would be prejudicial as a *Bruton* violation is premature. In *Bruton v United States*, 391 US 123 [1968], the Supreme Court held that the admission of a confession made by one defendant, who does not testify, and which contains references implicating his codefendant, violates the latter's right of cross-examination under the confrontation clause. The court noted that there is a substantial risk that the jury, even with limiting instructions, may consider the implicating references in determining the codefendant's guilt. Unless the implicating references can be effectively deleted, the statement is not admissible unless separate trials are had. However, the New York Court of Appeals has defined certain instances where the *Bruton* rule would not be violated including where the confessing defendant testifies at the trial, thus affording the codefendant an opportunity to cross-examine him (*People v Anthony*, 24 NY2d 696 [1969]) and where the codefendant has himself confessed substantially to the same effect as the confessing defendant (*People v McNeil*, 24 NY2d 550 [1969]). The hearing court must determine the admissibility and possibility of the redaction of the codefendants' statements and whether the codefendants will be testifying at defendant's trial.

Although defendant is charged with only two counts of the indictment, a limiting instruction at trial would properly direct the jury to separately consider the proof as to each crime charged, thereby eliminating any prejudice to defendant (*see People v Veeny*, 215 AD2d 605 [2d Dept 1995]).

For these reasons, defendant's motion to sever is premature.

VI.

## MOTION for *SANDOVAL* and *VENTIMIGLIA* HEARINGS

Defendant has moved for a pre-trial hearing to permit the trial court to determine the extent, if at all, to which the People may inquire into defendant's prior criminal convictions or prior uncharged criminal, vicious, or immoral conduct. On the People's consent, the Court orders a pre-trial *Sandoval* hearing (*see People v Sandoval*, 34 NY2d 371[1974]). At said hearing, the People shall notify defendant, *in compliance with CPL Article 245*, of all specific instances of his criminal, prior uncharged criminal, vicious, or immoral conduct of which they have knowledge and which they intend to use in an attempt to impeach defendant's credibility if he elects to testify at trial, *and, in any event, not less than 15 days prior to the first scheduled trial date.* Defendant shall bear the burden of identifying any instances of his prior misconduct that he submits the People should not be permitted to use to impeach his credibility. Defendant shall be required to identify the basis of his

5

belief that each event or incident may be unduly prejudicial to his ability to testify as a witness on his own behalf (*see People v Matthews*, 68 NY2d 118 [1986]; *People v Malphurs*, 111 AD2d 266 [2d Dept 1985]).

If the People determine that they will seek to introduce evidence at trial of any prior uncharged misconduct and criminal acts of defendant, including acts sought to be used in their case in chief, they shall so notify the Court and defense counsel, *in compliance with CPL Article 245, and, in any event, not less than 15 days prior to the first scheduled trial date*, and a *Ventimiglia/Molineux* hearing (*see People v Ventimiglia*, 52 NY2d 350 [1981]; *People v Molineux*, 168 NY 264 [1901]) shall be held immediately prior to trial to determine whether or not any evidence of uncharged crimes may be so used by the People. The People are urged to make an appropriate decision in this regard sufficiently in advance of trial to allow any *Ventimiglia/Molineux* hearing to be consolidated and held with the other hearings herein.

VII.
### MOTION for a BILL OF PARTICULARS

Defendant's request for a bill of particulars is denied as untimely (CPL 200.95). Moreover, in accordance with CPL Article 245, defendant has discovery which will allow him to prepare and conduct a defense. This case involved the execution of five search warrants which contain an affidavit detailing the facts of the case. Additionally, defendant is entitled to and has, or will have, a copy of the Grand Jury minutes and exhibits. The People have also provided specific facts of the case in their Affirmation in Opposition. As such, defendant's motion for a bill of particulars is denied.

VIII.
### LEAVE TO MAKE ADDITIONAL MOTIONS

Defendant's motion for leave to make additional motions is denied. Defendant must demonstrate good cause for any further pre-trial motion for omnibus relief, in accordance with CPL 255.20(3).

The foregoing constitutes the Decision and Order of this Court.

Dated:     White Plains, New York
          October _11_, 2022

                                     Honorable Anne E. Minihan
                                     Acting Justice of the Supreme Court

6

[* 6]

To:
Hon. Miriam E. Rocah
District Attorney, Westchester County
111 Dr. Martin Luther King, Jr., Blvd.
White Plains, NY 10601
Attn: ADA Adrian Murphy
AMurphy@westchesterda.net

Stephen V. Rubeo, Esq.
One Executive Blvd., Suite 105
Yonkers, NY 10701
rubeolaw@gmailcom
*Attorney for defendant, Andy Rosario*

[* 7]